**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**(ATLANTA DIVISION)**

| | |
|---|---|
| KEENAN LEE PLEDGER, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL** |
| EXPERIAN INFORMATION<br>SOLUTIONS, INC.; TRANS UNION<br>LLC, | 1. FCRA, 15 USC §1681 *et seq.* |
| Defendants. | |

NOW COMES Plaintiff Keenan Lee Pledger ("Plaintiff"), by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against Defendants Experian Information Solutions, Inc. ("Experian") and Trans Union LLC ("Trans Union") (collectively, "Defendants"):

## INTRODUCTION

1.    Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.*, by Defendants. Plaintiff contends Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.

1

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, because Plaintiff alleges violations of the FCRA, a federal law, and 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District and are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4.      Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in Dekalb County, Georgia.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.      Defendant Experian is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC §

2

1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8.      During all time pertinent to this Complaint, Experian was authorized to conduct business in the State of Georgia and conducted business in Georgia on a routine and systematic basis.

9.      Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC § 1681a(d), to third parties. Experian regularly furnishes consumer reports to third parties for monetary compensation, fees and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10.      Defendant Trans Union is a *consumer reporting agency*, as defined in 15 U.S.C. § 1681a(f)).   On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

11.     During all time pertinent to this Complaint, Trans Union was authorized to conduct business in the State of Georgia and conducted business in Georgia on a routine and systematic basis.

12.     Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC § 1681a(d), to third parties. Trans Union regularly furnishes consumer reports to third parties for monetary compensation, fees and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency," as defined by 15 U.S.C. § 1681a(f) of the FCRA.

13.     During all time pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

14.     Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## RELEVANT FACTUAL BACKGROUND

15.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

16.     Defendants report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

17.     Defendants' credit reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18.     Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants, and other information must be independently gathered by Defendants, or acquired from third party providers/vendors or repositories, including computerized reporting services like PACER.

19.     The information Defendants include in a credit report contributes to a consumer's creditworthiness, and determines their FICO Scores.

20.     The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon credit reports from the CRAs (like Defendants) to make lending decisions. Those institutions also use FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a consumer's credit report.

21.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's credit report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness to future potential creditors.

22.     FICO Scores factor the following credit report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

23.     "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be. However, once a delinquent account has been remedied and the longer the account stays current, the more a consumer's FICO Score should increase.

24.    The "amount of debt owed" is a major factor in a consumer's credit score; by reporting a debt as outstanding when it is in fact discharged, a CRA creates an impression that the amount of currently owed debts is higher than it actually is, thereby impacting a consumer's credit score.

25.    Upon information and belief, a consumer who has obtained a bankruptcy discharge and has a credit report that is reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than someone without a bankruptcy discharge.

26.    Defendants obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of his consumer credit report, as well as the individual account tradelines.

27.    Defendants had notice of Plaintiff's bankruptcy discharge through independent collection of consumer information as well as from information furnished by tradeline furnishers. Defendants reported Plaintiff's bankruptcy filing and/or discharge in the public record section of their credit reports, as well as in individual account tradelines.

28.    Defendants are well aware that the effect of a discharge order in a Chapter 7 Bankruptcy is that all statutorily dischargeable pre-bankruptcy petition debts, other than those that have been reaffirmed or successfully challenged in an

adversary proceeding, are discharged; both such exceptions are rare and furthermore identified on the individual consumer's bankruptcy docket sheet.

29. Additionally, information indicating that a specific debt has not been discharged, but instead was reaffirmed or successfully challenged through an adversary proceeding, can be retrieved from the same sources from which Defendants voluntarily obtained the consumer's bankruptcy case information.

30. Defendants can also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

31. However, Defendants regularly report inaccurate information about consumers' debts after they receive a Discharge Order.

32. Rather than follow reasonable procedures to assure maximum possible accuracy, as they are required by the FCRA, Defendants frequently report information regarding pre-bankruptcy debts without supporting evidence.

33. In fact, Defendants often publish consumer information that conflicts with the information included in their credit files, is contained in public records, or is provided by data furnishers.

34. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate reporting following a Chapter 7 discharge.

35.    Therefore, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which often produce inaccurate balances and account and payment statuses.

36.    Plaintiff filed for Chapter 7 Bankruptcy in April 2020 in the United States Bankruptcy Court for the Northern District of Georgia, case no. 20-65205.

37.    There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "non-dischargeable" pursuant to 11 U.S.C. § 523 *et seq.*

38.    Accordingly, Plaintiff received an Order of Discharge, discharging his personal liability on the dischargeable debts on July 6, 2020.

39.    Upon information and belief, following Plaintiff's Chapter 7 Bankruptcy, Defendants prepared one or more credit reports concerning Plaintiff. Defendants reported Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, month and year of filing, and the fact of discharge.

40.    Defendants also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the month and year that the accounts were opened, status, and the month and year of the last status update.

41.    For pre-petition accounts included in Plaintiff's Chapter 7 Bankruptcy, including collection accounts, Defendants are generally required to

report the status of these debts as discharged through bankruptcy, and/or with a $0 balance, unless the furnishers provide information showing that a debt was excludable from discharge.

42. Nevertheless, Defendants continued to report one or more accounts inaccurately. Trans Union reported a discharged account with an outstanding balance after Plaintiff received the discharge, instead of accurately reporting the status of this pre-petition debt as included in or discharged in Chapter 7 Bankruptcy with a $0 balance. Experian reported an account that was opened after the bankruptcy petition was filed as an account that had been included in bankruptcy, instead of reporting the account as being timely paid as agreed.

43. Experian was reporting Plaintiff's FEB/Destiny (the "FEB/Destiny Account") account no. 5132XXXX opened in July 2020, inaccurately.

44. Experian inaccurately reported the FEB/Destiny Account as included in Plaintiff's bankruptcy and discharged in July, 2020. The FEB/Destiny Account was not included in Plaintiff's bankruptcy because it was not opened until July 2020.

45. Experian reported that the FEB/Destiny Account had been discharged in bankruptcy despite reporting in the public records section that the bankruptcy had been filed in April 2020, well before the FEB/Destiny Account was opened in July 2020.

46. Notably, the other national consumer reporting agencies, Equifax and Trans Union, did not inaccurately report the FEB/Destiny Account like Experian.

47. Upon information and belief, FEB/Destiny reported to the CRAs that Plaintiff's debt was **not** included in or discharged in bankruptcy, but Experian rejected that reporting.

48. Upon information and belief, Experian additionally and/or alternatively was on notice of FEB/Destiny's unreliable procedures to properly update the reporting of pre-Chapter 7 debt upon discharge of a bankruptcy, and may therefore have reported information contradicted by Experian's own records and knowledge of Plaintiff's bankruptcy discharge in unreasonable reliance on a furnisher.

49. Experian is inaccurately reporting that Plaintiff discharged a post-bankruptcy petition debt that he properly paid as agreed, thereby damaging his credit scores.

50. Trans Union was reporting Plaintiff's UAA auto account (the "UAA Account") account no. 5190XXXX opened in May 2019, inaccurately.

51. Trans Union inaccurately reported the UAA Account with a balance of $10,530.00. The UAA Account was included in Plaintiff's bankruptcy and was discharged.

52.     Trans Union inaccurately reported the UAA Account with a balance owed after it was discharged.

53.     Trans Union did not report the UAA Account had been discharged in bankruptcy despite reporting the bankruptcy filing in the public records section and reporting other unsecured pre-bankruptcy accounts as included in "Chapter 7 Bankruptcy."

54.     Notably, the other national consumer reporting agencies, Equifax and Experian, did not inaccurately report the UAA Account like Trans Union.

55.     Upon information and belief, UAA reported Plaintiff's debt to the CRAs as included in or discharged in bankruptcy, but Trans Union rejected that reporting.

56.     Upon information and belief, Trans Union additionally and/or alternatively was on notice of UAA's unreliable procedures to properly update the reporting of pre-Chapter 7 debt upon discharge of a bankruptcy, and may therefore have reported information contradicted by Trans Union's own records and knowledge of Plaintiff's bankruptcy discharge in unreasonable reliance on a furnisher.

57.     Trans Union is inaccurately reporting that Plaintiff owes a balance that he does not actually owe, thereby damaging his credit scores.

58.     Trans Union inaccurately reports the status of the UAA Account debt, even though the debt is in fact discharged, Plaintiff is no longer personally liable for the debt, and Trans Union has actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy discharge.

59.     Upon information and belief, Plaintiff suffered damages including credit harm, loss of credit opportunity, and other financial harm due to Defendant's credit reporting errors.  Plaintiff also suffered interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

60.     Plaintiff applied for credit and, upon information and belief, obtained credit at less favorable rates due to Defendants' inaccurate reporting.

## COUNT I
### Violations of the FCRA, 15 U.S.C. § 1681e(b)

61.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

62.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

63.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

64.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

65.     The FCRA requires consumer reporting agencies like Defendants to follow reasonable procedures to assure maximum possible accuracy of consumer information.

66.     Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy.

67.     Consequently, Defendants routinely report inaccurate and materially misleading information about Plaintiff without verifying the accuracy of this information or updating this information as required by § 1681(e)(b), when Defendants possess information inconsistent with the reported information and possess information establishing that the reported information is in fact inaccurate.

68.     Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures.

69.     Defendants have obtained or have available substantial written materials that apprised Defendants of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

70.     Defendants are well aware that the effect of a discharge order in a no asset Chapter 7 Bankruptcy is to discharge all dischargeable pre-bankruptcy petition debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

71.     Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

72.     Defendants voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge to report this information in their consumer credit reports.

73.     The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of the bankruptcy upon consumer debts, including the bankruptcy discharge.

74.     Despite knowledge of these legal obligations, Defendants acted willfully in consciously breaching known duties and deprived Plaintiff of his rights under the FCRA.

75.     Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

76.     Defendants possess information from which Defendants should know the reported information is inaccurate, as Defendants include the month and year that the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the month and year that the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

77.     Defendants are also on notice from other account tradelines reported by Defendants that indicate those accounts were included in/discharged in bankruptcy.

78.     Defendants are well aware that only pre-bankruptcy petition debts are included in a bankruptcy discharge.

79.   Defendants are also well aware that discharged debts should not be reported with an outstanding balance after the debt is discharged.

80.   In this case, Experian inaccurately reported debt pertaining to the FEB/Destiny Account was discharged even though Experian knew the account was opened after Plaintiff filed for bankruptcy.

81.   In this case, Trans Union inaccurately reported debt pertaining to the UAA Account that Trans Union knew was several months old, and which predated Plaintiff's Chapter 7 Bankruptcy. TransUnion knew this account was included and discharged in Plaintiff's Chapter 7 Bankruptcy, and therefore this should have been reported with a $0 balance instead of inaccurately reported with an outstanding balance.

82.   Alternatively, Defendants were negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

83.   Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.  Trans Union reports the existence of debt that was discharged in Plaintiff's Chapter 7 bankruptcy and Experian reports the discharge of an account that was opened after the bankruptcy petition was filed and was paid as agreed/not discharged.

84. Defendants are a direct and proximate cause, as well as a substantial factor in, causing actual damages and harm to Plaintiff, including, but not limited to, credit harm, embarrassment, anguish, and emotional and mental pain.

85. Defendants are therefore liable for actual and statutory damages, punitive damages, and attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*

86. Consequently, Plaintiff suffered damages, including credit harm, loss of credit opportunity, and other financial harm. Plaintiff also suffered interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants for the following:

(a)  An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(b)  An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(c)  An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(d)     An award of costs and reasonable attorneys' fees pursuant to 15

U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(e)     Such other and further relief as this Honorable Court may deem just

and proper, including any applicable pre-judgment and post-judgment

interest, and/or declaratory relief.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a

trial by jury of all issues so triable.

Respectfully submitted this 8th day of March 2021.

By: */s/ Jenna Dakroub*
Jenna Dakroub
Bar Number: 385021
**PRICE LAW GROUP, APC**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5513
F: (818) 600-5413
E: jenna@pricelawgroup.com
*Attorneys for Plaintiff,*
*Keenan Lee Pledger*